### In re ESM GOVERNMENT SECURITIES, INC., Debtor.

### Bankruptcy No. 85–6254–Civ–GONZALEZ.

United States District Court, S.D. Florida.

June 19, 1985.

---

Richard H. Critchlow, David M. Levine, Finley, Kumble, Wagner, Heine, Underberg & Casey, Miami, Fla., for trustee.

Charles W. Burson, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for Memphis School Bd.

Philip G. Newcomm, Shutts & Bowen, Miami, Fla., for Beaumont, Tex.

James M. Landis, Chris S. Coutroulis, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for Washington creditors.

William L. Hunnicutt, Craig Christenson, Sherman & Howard, Denver, Colo., for Clark County, Nev.

Kenneth Ryskamp, Squire Sanders & Dempsey, Miami, Fla., for Toledo, Ohio.

Sanford L. Bohrer, Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Miami, Fla., for Harrisburg, Pa.

Lawrence G. McMichael, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Dauphin, Pa.

David Wade, Martin, Tate, Morrow & Marston, Memphis, Tenn., for United Savings.

Richard Smith, Steel Hector & Davis, Miami, Fla., for American S & L.

Lowell L. Garrett, Morgan, Lewis & Brockius, Miami, Fla., for Tamarac, Fla.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D.C.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the joint motion of the creditors, Board of Education, Memphis City Schools ("Memphis") and the City of Beaumont, Texas, for an order directing the administration of this involuntary Chapter 7 proceeding as a stockbroker liquidation pursuant to Subchapter III, Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 741–752.

Chelan County, Washington, Clallam County, Washington, Jefferson County, Washington, the Public Utility District Self Insurance Fund, Clallam County Public Utility District Number 1, Washington (collectively "the Washington State creditors"), Clark County, Nevada, the City of Toledo, Ohio, the City of Harrisburg, Pennsylvania, Dauphin County, Pennsylvania and the Trustee in Bankruptcy join Memphis and Beaumont in urging the court to grant the motion for stockbroker liquidation. Also, on June 4, 1985, United Savings of America, F.A. ("United") filed its post-hearing memorandum in support of a stockbroker liquidation. American Savings and Loan Association ("American") and the City of Tamarac, Florida oppose the motion. The Securities Investor Protection Corporation filed an *amicus curiae* memorandum setting forth its position in this matter.

The court has considered the motion and submitted memoranda, taken testimony and documentary evidence and hear argument of able counsel. For the reasons set forth below, this bankruptcy shall proceed as a stockbroker liquidation under Subchapter III, Chapter 7 of the Bankruptcy Code ("the Code").

## I. FACTUAL BACKGROUND

ESM Government Securities, Inc. ("ESM" or "the debtor") was an obscure Fort Lauderdale, Florida corporation registered by the States of Florida, Tennessee and Illinois as a broker/dealer in government securities, i.e. Government Mortgage Association Certificates ("GNMAs" or "Ginnie Maes") and United States Treasury notes and bills. ESM did business with banks, savings and loans, and similar financial institutions as well as numerous municipalities, counties, credit unions, universities, school districts and other public and governmental entities. ESM engaged with these investors in three types of transactions: 1) purchase and sale of government securities; 2) term repurchase agreements; and 3) reverse repurchase agreements.

Almost immediately following its organization, the debtor, its parent corporation, ESM Group, Inc., and other wholly owned subsidiaries and affiliates began to experience substantial losses. Indeed, since 1980, none of the ESM companies ever showed a profit; ESM's true financial condition, however, was never publicly disclosed.

In March, 1985, the debtor's actual financial situation first came to public light. As reflected in the Report of C. Thomas Tew, equity receiver of the ESM companies, audits revealed that the debtor and other ESM affiliates were hopelessly insolvent, and were clearly unable to meet approximately $300,000,000—plus in obligations

owed to customers for various securities transactions.

On March 4, 1985, the Securities and Exchange Commission applied for and received a final judgment of injunction from this court against the debtor and other ESM companies. The injunction, *inter alia*, froze the assets of ESM companies and their principals and subjected the latters' assets to constructive trusts. For the next several days, the court-appointed receiver attempted to locate additional assets for the benefit of the receivership estate.

On March 26, 1985, after consultation with creditors, the receiver filed an involuntary petition in bankruptcy against the debtor. On March 27, 1985, the court withdrew reference of this case from the United States Bankruptcy Court in and for the Southern District of Florida pursuant to Title 28 U.S.C., sections 157(d) and 1334(d).

## II. STOCKBROKER LIQUIDATION

Subchapter III of Chapter 7 of the Code provides enhanced protection for customers of an insolvent stockbroker. This Subchapter was enacted in response to differing treatment accorded investors under state law and to provide a more equitable distribution of assets amongst creditors of the debtor.[1]

Subchapter III liquidation provides for distribution of assets amongst four categories of creditors: secured creditors; customers fortunate to recover "customer named securities";[2] creditors entitled to "customer property";[3] and general creditors. Additionally, customers receive priority in distributions made from customer

property, 11 U.S.C. § 742; insider claims are automatically subordinated, 11 U.S.C. § 747; and the trustee has an additional avenue for voiding preferencial transfers, 11 U.S.C. § 749.

Finally, stockbroker liquidation under Subchapter III is not discretionary. 11 U.S.C. §§ 103(c) and 109(d). Thus, a determination that ESM was a stockbroker with at least *one* customer mandates liquidation pursuant to the provisions of Subchapter III.

### A. *Statutory Definitions*

Title 11 U.S.C., section 101(46) defines "stockbroker" to mean a person

(A) with respect to which there is *a customer* as defined in section 741(2) of this title; and

(B) that is engaged in the business of effecting transaction in securities—

(i) for the account of others; or

(ii) with members of the general public from or for such person's own account;

(Emphasis added).

Therefore, status as a stockbroker requires that ESM have at least one customer as defined in Title 11 U.S.C., section 741(2). This section provides:

(2) "customer" includes [4]

(A) entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbro-

---

**1.** An informative discussion of the history of Subchapter III is found in 4 *Collier on Bankruptcy*, Subchapter III-Int-1 (15th ed. 1984).

**2.** Customer named security is defined in section 741(3) as a security:
(A) held for the account of a customer on the date of filing of the petition ...;
(B) registered in such customer's name ... or in the process of being so registered under instruction from the debtor; and
(C) not in a form transferable by delivery on such date.

**3.** "Customer property", in essence, refers to a general category of securities, cash, etc. held in a fungible block for all customers. 11 U.S.C.

§ 741(4); *Matter of Paragon Securities Co.,* 599 F.2d 551 (3rd Cir.1979).

**4.** Section 102 of the Code provides that the term "includes" is not limiting. Further, legislative history manifests congressional intent for the term "customer" to include "anybody that interacts with the debtor in a capacity that concerns securities transactions...." House Report No. 95–595, 95th Cong., 1st Sess. 386–87 (1977) and Senate Report No. 95–989, 95th Cong., 2nd Sess. 100 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5886, 6342.

ker, from or for the securities account or accounts of such entity—

    (i) for safekeeping;

    (ii) with a view to sale

    (iii) to cover a consummated sale;

    (iv) pursuant ot a purchase;

    (v) as collateral under a security agreement; or

    (vi) for the purpose of effecting registration of a transfer; and

(B) entity that has a claim against a person arising out of—

    (i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or

    (ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security.

## B. *Repurchase Agreements*

At the time the movants filed their motion seeking a stockbroker liquidation and, indeed, at the time of hearing, the creditors needed to address the broader issue of whether repurchase transaction involved the purchase and sale of securities. The court received exhaustive memoranda of law addressing this issue, and the hearing held on May 31, 1985, focused almost exclusively on repurchase agreements. This court also spent considerable time researching this issue and, in fact, prepared a memorandum opinion since the characterization of repurchases agreements as purchases and sales of securities presents an issue of first impression in this Circuit. Facts that first came to light on June 4, 1985, as discussed *infra*, require this court to narrow the scope of this Order.

The motion before this court requires a determination of whether ESM had at least one customer with whom it effected securities transactions as either a broker or a dealer. As facts now reveal, ESM did broker securities transactions, unrelated to any repurchase transaction, with at least one customer. Therefore, any discussion regarding the categorization of repurchase agreements would be mere *dicta* and without precedential value. This court realizes that it may be called upon to decide this issue at a later time. For the specific purposes of the pending motion, however, the characterization of repurchase agreements is irrelevant.

## C. *Customers*

The determination that ESM had one customer is dispositive of the issue before the court: whether this liquidation must proceed under the directives of Subchapter III? The evidence presented to the court at the "thirteenth hour" clearly establishes that ESM did indeed have at least one customer.

On June 4, 1985, United Savings of America, F.A. ("United") filed a post-hearing memorandum, with attached affidavit of Richard A. Bailey, setting forth certain transactions between United and ESM. United contracted with ESM for the purchase of $60 million in GNMA securities. Because of the delay between the trade date and settlement date, ESM required the posting of a $1 million United States Treasury Bond as margin collateral. Upon completion of the purchase commitments, ESM failed to return the collateral. Although its transactions with ESM were completed in October, 1984, United first realized on May 21, 1985, that its $1 million Treasury Bond had not been returned.

The transactions between ESM and United involved the direct sale of GNMA securities and in no way involved repurchase agreements.

Owing to the above transaction, it is beyond question that United falls within the category of "customers" as set forth in sections 741(2)(A) and (B). United transacted business with ESM relevant to the direct purchase of GNMAs; its claim is against ESM on account of a security held by ESM as collateral under an agreement to purchase those government securities.

## D. *Stockbroker*

To fall within Subchapter III's definition of "stockbroker", two elements must be

satisfied. First, there must be a customer. As previously discussed, United was a customer. Second, a person must engage in business effecting securities transactions as either a broker or as a dealer. In its transactions with United, ESM clearly effected securities transactions as a broker. Thus, no further discussion is necessary as ESM falls squarely within the statutory definition of "stockbroker". 11 U.S.C. § 101(46).

## III. CONCLUSION

The facts presented to the court reveal that ESM had at least one customer and that ESM effected transactions in securities as a broker. Thus, the requisite elements for a stockbroker liquidation have been reached. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Joint Motion to Administer Case as a Stockbroker Liquidation be and the same is GRANTED. This case shall proceed pursuant to Subchapter III, Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 741–752.